**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FEDERATION OF ASSOCIATIONS IN BEHAVIORAL & BRAIN SCIENCES, *et al.*,

*Plaintiffs*,

v.

NATIONAL SCIENCE FOUNDATION, *et al.*,

*Defendants*.

Case No. 1:26-cv-15015-NMG

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE NONPARTY DECLARATIONS UNDER PSEUDONYMS**

## INTRODUCTION

Plaintiffs respectfully move for leave to use pseudonyms for the declarations of two nonparty scientists who belong to member societies of Plaintiff Federation of Associations in Behavioral & Brain Sciences (FABBS). Ex. 9, John Doe Decl. ¶ 2; Ex. 14, Jane Doe Decl. ¶ 2. The declarations support Plaintiffs' motion for a stay under 5 U.S.C. § 705 and a preliminary injunction against the National Science Foundation's (NSF) closure of its Directorate for Social, Behavioral, and Economic Sciences (SBE).

Both declarants are scientists whose research depends on NSF funding. John Doe, a behavioral scientist, relies on NSF to fund his research and staff of his lab. John Doe Decl. ¶¶ 20–23. He has a pending proposal with SBE to fund a project that would study how artificial intelligence and other digital tools shape individual and collective thinking. Ex. 9, John Doe Decl. ¶¶ 2, 5. Jane Doe, a psychology professor, regularly applies to NSF to fund her work. Ex. 14, Jane Doe Decl. ¶ 4. Most recently, she submitted a proposal that NSF staff told her they would recommend for funding, but it was put on hold then declined after NSF announced it would close SBE. *Id.* ¶¶ 9–14. She would apply again if SBE remained open. *Id.* ¶ 19.

The declarants fear that identifying themselves as witnesses against NSF will cost them in NSF's grant decisions. John Doe's application "is still pending," he "will likely submit future grant applications" if SBE reopens, and he fears "retaliation if [his] name is made public." Ex. 9, John Doe Decl. ¶ 29. Jane Doe also depends on NSF for funding. Ex. 14, Jane Doe Decl. ¶ 4. Furthermore, Plaintiffs' counsel has spoken with other scientists who refused to submit declarations or participate publicly in this litigation due to their fear of NSF grant retaliation.

That fear is well founded. Courts, including in the First Circuit, have found that this Administration has used grants (including NSF grants) to punish those who sue it or speak against

it. *See*, *e.g.*, *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, 816 F. Supp. 3d 27, 34, 42, 60 (D.D.C. 2026); *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 239, 247 (D.D.C. 2025); *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 120, 138 (D. Mass. 2025); *Thakur v. Trump*, 176 F.4th 1187, 1201, 1203 (9th Cir. 2026).

Further, in the current political climate, individuals publicly associated with opposition to the Trump-Vance Administration's policies have faced significant threats and harassment. One supporter of President Trump created a public "watchlist" of career federal employees who allegedly oppose the Administration, declaring, "It's important to let anti-Trump civil servants know someone is watching and taking names." Pls.' Mot. for Leave to File Nonparty Decls. under Pseudonyms at 6, *Am. Fed'n of Gov't Emps., AFL-CIO v. Kupor*, No. 1:25-cv-13305-GAO (D. Mass. Nov. 17, 2025), ECF No. 33 (quoting Kamai Decl. Ex. M). Academics have similarly been targeted by ideological surveillance and "Professor Watchlists" designed to harass and intimidate university faculty who express disfavored views.[1]

The First Circuit permits pseudonyms where identifying the would-be Doe would harm "innocent non-parties" or where anonymity is needed "to forestall a chilling effect on future litigants who may be similarly situated." *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022). Both rationales apply here, and as nonparties, the declarants have "a stronger case for anonymity" than a party would. *Id*. Two courts in this District have granted this relief to nonparty declarants who feared retaliation for supporting suits against the federal government. *Am. Fed'n*

[1] *See, e.g., Curtis Bunn, How Charlie Kirk's Professor Watchlist Reshaped Free Speech on Campus, NBC News* (Sept. 23, 2025), *https://www.nbcnews.com/news/us-news/charlie-kirk-professor-watchlist-free-speech-college-campus-rcna231448; Vimal Patel, Professors Are Being Watched: "We've Never Seen This Much Surveillance,"* N.Y. Times (Feb. 4, 2026), https://www.nytimes.com/2026/02/04/us/professors-classroom-surveillance-politics.html.

*of Gov't Emps., AFL-CIO v. Kupor*, No. CV 25-13305-GAO, 2026 WL 2210891, at *1 (D. Mass. July 31, 2026); *New York v. McMahon*, No. 1:25-CV-10601-MJJ, 2025 WL 1478387, at *1 (D. Mass. Mar. 21, 2025). The Court should do the same. This protection is especially critical here given the declarants' heavy reliance on SBE funding. SBE is often the only realistic avenue for this research, Ex. 14, Jane Doe Decl. ¶ 16; Ex. 9, John Doe Decl. ¶ 19; Ex. 7, Kubota Decl. ¶ 23, and without it, these scientists are forced to downsize labs, halt graduate admissions, and risk the derailment of their careers, Ex. 9, John Doe Decl. ¶¶ 20–24.

**ARGUMENT**

Although courts apply a presumption against a *party's* use of pseudonyms, the First Circuit has endorsed the use of pseudonyms when "identifying the would-be Doe would harm 'innocent non-parties'" or have a "chilling effect" on their participation in proceedings. *Massachusetts Inst. of Tech.*, 46 F.4th at 67, 71; *see Am. Fed'n of Gov't Emps., AFL-CIO*, 2026 WL 2210891, at *1 (allowing nonparty declarants to use pseudonyms due to risk of adverse employment action by executive officials); *New York v. McMahon*, 2025 WL 1478387 at *1 (noting that a nonparty "has a stronger case for anonymity than a party") (citation omitted).

Indeed, even when the public's right of access to judicial proceedings is at stake—and here it is not, because Plaintiffs do not seek to seal judicial records—"[t]hird-party privacy interests . . . weigh heavily in a court's balancing equation." *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir.1995)).

**A. The risk of retaliation justifies the use of pseudonyms**

The publication of the nonparty declarants' identities exposes Drs. John and Jane Doe to retaliation in their grant applications with NSF. Dr. John Doe has a proposal pending with SBE

that was recommended for funding, Ex. 9, John Doe Decl. ¶¶ 6–7, 29, and Dr. Jane Doe will apply again if SBE remained open, Ex. 14, Jane Doe Decl. ¶¶ 13–14, 19.

The risk of exposure to potential retaliation is concrete. Courts have identified a pattern of retaliation against individuals for "their involvement in litigation that is perceived as a legal or political threat to this Administration," a pattern another court has already held justified the plaintiffs' fears they would suffer retaliation if they proceeded publicly. *League of Women Voters v. United States Dep't of Homeland Sec.*, No. 25-3501, 2025 WL 2897654, at *2 (D.D.C. Oct. 10, 2025); *Does 1-2 v. Off. of Pers. Mgmt.*, 763 F. Supp. 3d 58, 61 (D.D.C. 2025).

Specifically, courts have found that the Administration has cut off grants to punish those who sue it or speak against it. See *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, 816 F. Supp. 3d 27, 34, 42, 60 (D.D.C. 2026) (finding a likely causal link between protected speech and retaliatory grant terminations executed the day before a scheduled hearing); *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 239, 247 (D.D.C. 2025) (finding likely retaliation where DOJ cancelled the ABA's grants because the ABA joined a lawsuit against the Administration); *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 120, 138 (D. Mass. 2025) (finding that Harvard's protected conduct was "a substantial and motivating factor" in grant terminations, including an NSF termination letter); *Thakur v. Trump*, 176 F.4th 1187, 1201, 1203 (9th Cir. 2026) (finding that NSF identified grants for termination "through keyword searches and analytics" and that terminations were "aimed at the suppression of viewpoints with which the government disagrees").

Both of the First Circuit's rationales for allowing the use of pseudonyms apply here. Identifying the declarants would harm "innocent non-parties," as disclosure of their identities could expose them to retaliation. *Mass. Inst. of Tech.*, 46 F.4th at 71. Courts in this District have

granted pseudonyms to nonparty declarants on exactly this basis. In *McMahon*, the court held that federal employees' "fears of retribution and retaliation in this context [were] reasonable" and that they were "likely to be harmed as 'innocent non-parties' collaterally because of this litigation." 2025 WL 1478387, at *1. And in *Kupor*, the court found that declarants identified as "insufficiently loyal to the President" were "likely to suffer the same harm that the plaintiffs seek to deter by the instant action." 2026 WL 2210891, at *1. So too here. "The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Likewise, fear of recrimination from the larger community is also reason to allow the declarants to proceed pseudonymously. *Jones v. Critchfield*, 803 F. Supp. 3d 1078, 1088 (D. Idaho 2025) (finding that non-party's fear of recrimination from community if views on political and sensitive subject became public warranted anonymous proceeding). Here, the declarants reasonably fear the possibility of being added to public "watchlists" that have been specifically designed and used to intimidate university faculty. *See supra* note 1.

**B. Disclosing the declarants' names would chill participation in related litigation**

The interest in the fair administration of justice also weighs in favor of anonymity. When the "release [of personal information] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Amodeo*, 71 F.3d at 1050. The First Circuit likewise recognizes that anonymity may be warranted "to forestall a chilling effect on future litigants who may be similarly situated." *Mass. Inst. of Tech.*, 46 F.4th at 71. Courts in this District have applied that principle to nonparty declarants in suits against the federal government, reasoning that "granting anonymity may forestall the chilling effects on future litigants seeking to ensure that the administration is acting within the appropriate legal bounds." *McMahon*, 2025 WL 1478387, at *1; *see Kupor*, 2026

WL 2210891, at *1. If people with pending grant applications had to publicly disclose their identities and expose themselves to retaliation to participate in cases challenging unlawful government policies, witnesses would be less likely to participate in this litigation and other cases against the government. In fact, Plaintiffs' counsel has already spoken with other scientists who refused to submit declarations or participate fearing retaliation.

**C. Anonymity is more appropriate because the claims are against the government**

This Court has recognized that "plaintiffs challenging governmental activity" are among the circumstances in which fictitious names are commonly used. *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995) (Gorton, J.). Pseudonyms are more appropriate in cases like this one, which "challeng[e] the actions of the government," than in suits between private parties. *Doe v. City of Apple Valley*, 2020 WL 1061442, at *1 (D. Minn. Mar. 5, 2020); *see Doe v. Smith*, No. CV 18-12266-PBS, 2018 WL 11584808, at *1 (D. Mass. Nov. 5, 2018) ("Courts are more likely to permit plaintiffs to proceed under a pseudonym when they are pursuing a claim against the government rather than a private individual."). "When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) (citation omitted). And unlike the plaintiff in *Bell Atlantic*, whose "fundamental concern seem[ed] to be embarrassment," 162 F.R.D. at 422, the declarants here face concrete risks to their pending and future NSF proposals.

**D. No countervailing public interest justifies publishing the declarants' names**

By contrast, the public interest in the identities of these declarants is limited. The sole information withheld from the public would be the nonparty declarants' names and personally identifying information. Withholding names alone, while the substance of the declarations remains

public, "does not impede the public's ability to monitor the judicial process" when those identifiers are "irrelevant to the core legal issues" and "protecting the privacy of non-parties is a significant countervailing interest." *Greenspan v. MasMarques*, No. 23-cv-10134-DJC, 2026 WL 2643984, at *2 (D. Mass. Apr. 15, 2026); *see United States v. Swartz*, 945 F. Supp. 2d 216, 221 (D. Mass. 2013) (redacting identifying information was "a minor concern considering that the content within those documents will be largely unaltered"); *Doe v. Trs. of Bos. Univ.*, No. 24-cv-10619-FDS, 2024 WL 4700161, at *5 (D. Mass. Nov. 6, 2024) ("The actual identity of plaintiff is not central to the public's interest in the case."); *Doe v. Austin*, No. 2:22-CV-00368-NT, 2023 WL 3568188, at *2 (D. Me. May 19, 2023) ("The public can evaluate the Court's assessment of the issues in the case without the knowledge of Plaintiffs' identities."). The low public interest in the identities of the witnesses confirms that they should be allowed to proceed by pseudonym.

## CONCLUSION

Because the confidentiality interests of declarants John and Jane Doe outweigh any interest in the public disclosure of their names, Plaintiffs respectfully request that the Court grant this motion.

November 17, 2026

Respectfully submitted,

/s/ Sean Ouellette
Sean Ouellette
Sriram Sridharan*
Lesley Farby*
Robin F. Thurston*
Democracy Forward
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
souellette@democracyforward.org

*Counsel for Plaintiffs*
**Admitted pro hac vice]*

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I certify that counsel for Plaintiffs have sent counsel for all Defendants notice of this motion and have sought Defendants' consent to this motion. On November 17, 2026, at 9:44 a.m., I sent an email to counsel for Defendants to request their position on this motion. They had not responded as of this filing.

*/s/ Sean Ouellette*
Sean Ouellette

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). I have also emailed the motion to counsel for Defendants and caused the motion to be served by first class mail.

*/s/ Sean Ouellette*
Sean Ouellette